# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **SHENEKA H. HATFIELD** | **CIVIL ACTION NO. 16-1307** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **BIO-MEDICAL LIFE APPLICATIONS OF LOUISIANA, LLC** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 20] filed by Defendant Bio-Medical Applications of Louisiana, LLC. Plaintiff Sheneka H. Hatfield opposes the motion. [Doc. No. 28]. For reasons assigned below, the Motion for Summary Judgment is GRANTED.

## I.  FACTS AND PROCEDURAL HISTORY

In October 2013, Defendant hired Plaintiff to work as a patient care technician ("PCT") at its dialysis clinic in Monroe, Louisiana. As a PCT, Plaintiff was responsible for weighing dialysis patients, helping patients to and from their wheelchairs, periodically recording patients' blood pressure and temperature, connecting patients to dialysis machines, removing patients from the machines, monitoring patients for side effects,[1] providing polite and courteous customer service, and sympathizing with patients who are experiencing kidney failure. Patients generally receive dialysis treatment three times each week, resulting in PCTs spending considerable time with patients.

If a patient moves her arm or if a kink develops in the line, the dialysis machine stops and an alarm sounds. PCTs are responsible for restarting the machine; if the machine is not restarted, a clot can form. If a patient stands during treatment or her needle comes out, the patient can bleed

---

[1] Side effects include low blood pressure, cramping, anemia, and loss of consciousness.

to death.

Defendant staffs its clinic with one PCT for every four patients, one registered nurse for every eight patients, one secretary, one social worker, and one clinical manager. The clinical manager was Plaintiff's direct supervisor and worked at the clinic daily. For the majority of Plaintiff's employment with Defendant, Sierra Norwood ("Norwood") was her clinical manager. When Norwood went on maternity leave from approximately April of 2015 to July of 2015, Sherry Scalia ("Scalia") served as Plaintiff's clinical manager. The clinical manager reports to the Director of Operations, Dana Temple ("Temple"), who generally visited the clinic once each month.

In the instant Complaint, Plaintiff alleges that she was "regularly subjected to sexual harassment" from patients while working for Defendant, which created a "sexually charged and hostile work environment." [Doc. No. 1, p. 2]. She alleges that, sometime in 2014, one patient, Patient B, told her he wanted her to "get naked and take care of [him]." [Doc. No. 28-1, p. 2]. She continued working and did not report Patient B's comments. *Id.*

Plaintiff alleges that another patient, Patient C, asked to "touch [her] bottom" and claimed that he "would have had [her] sprung, back in [his] young days." [Doc. No. 28-3, pp. 6-7]. Plaintiff continued working and did not report the incident.

In March of 2015, according to Plaintiff, another patient, Patient A, attempted to grab Plaintiff's breast, forcing her to evade his reach. Plaintiff reported the alleged incident to Norwood, her clinical manager at the time. Plaintiff claims that she reported the incident again on June 11, 2015, to her then-clinical manager, Scalia, and the Director of Operations, Temple. Plaintiff alleges that, despite her complaints, "no meaningful action was taken . . . ." *Id.*

On June 4, 2015, Scalia witnessed Plaintiff using her cell phone on the treatment floor, which

to death.

Defendant staffs its clinic with one PCT for every four patients, one registered nurse for every eight patients, one secretary, one social worker, and one clinical manager. The clinical manager was Plaintiff's direct supervisor and worked at the clinic daily. For the majority of Plaintiff's employment with Defendant, Sierra Norwood ("Norwood") was her clinical manager. When Norwood went on maternity leave from approximately April of 2015 to July of 2015, Sherry Scalia ("Scalia") served as Plaintiff's clinical manager. The clinical manager reports to the Director of Operations, Dana Temple ("Temple"), who generally visited the clinic once each month.

In the instant Complaint, Plaintiff alleges that she was "regularly subjected to sexual harassment" from patients while working for Defendant, which created a "sexually charged and hostile work environment." [Doc. No. 1, p. 2]. She alleges that, sometime in 2014, one patient, Patient B, told her he wanted her to "get naked and take care of [him]." [Doc. No. 28-1, p. 2]. She continued working and did not report Patient B's comments. *Id.*

Plaintiff alleges that another patient, Patient C, asked to "touch [her] bottom" and claimed that he "would have had [her] sprung, back in [his] young days." [Doc. No. 28-3, pp. 6-7]. Plaintiff continued working and did not report the incident.

In March of 2015, according to Plaintiff, another patient, Patient A, attempted to grab Plaintiff's breast, forcing her to evade his reach. Plaintiff reported the alleged incident to Norwood, her clinical manager at the time. Plaintiff claims that she reported the incident again on June 11, 2015, to her then-clinical manager, Scalia, and the Director of Operations, Temple. Plaintiff alleges that, despite her complaints, "no meaningful action was taken . . . ." *Id.*

On June 4, 2015, Scalia witnessed Plaintiff using her cell phone on the treatment floor, which

Defendant prohibits because it presents a safety risk. Scalia instructed Plaintiff to store her phone in her locker. In response, Plaintiff slammed her locker shut, prompting Scalia to call Plaintiff into her office. On June 11, 2015, Scalia and Temple issued Plaintiff a warning for violating the cell phone policy.

On June 16, 2015, Scalia received a complaint from a female patient that Plaintiff did not reset the patient's dialysis machine when necessary, had a hateful attitude when asked for assistance, and failed to assist another patient who needed help. Scalia chose not to discipline Plaintiff because, in part, she thought the incident was isolated.

On June 23, 2015, Scalia received a complaint from Patient A concerning Plaintiff. Patient A stated that he had a cramp in his leg, stood up to alleviate the cramp, and asked Plaintiff to take him off the machine. He complained that Plaintiff had a "snappy attitude," refused to take him off the machine, and told him to get out of her face and sit down. [Doc. Nos. 20-8, 20-9]. Plaintiff, however, disputes Patient A's version of events and alleges that Patient A wagged his tongue, licked his lips in a "sexually overt manner[,]" spoke to her using profane language, and threatened to "have her job." [Doc. No. 28-1, p. 3]. Plaintiff reported the alleged sexual harassment the same day to the social worker at the clinic, Charmaine Winters ("Winters"). *Id.* at 4.

On June 24, 2015, Scalia reported Patient A's complaint to the Director of Operations, Mia Haney ("Haney"),[2] and informed Haney that, due to safety concerns, she wanted to suspend Plaintiff until Defendant completed an investigation. Later that day, Haney placed Plaintiff on investigatory suspension. Shortly thereafter, Plaintiff called Defendant's human resource hotline and reported her version of the June 23, 2015 incident. The parties dispute whether Defendant adequately investigated

---

[2] Haney substituted for Temple, who was on vacation.

the incident.

On July 2, 2015, Scalia and Temple terminated Plaintiff's employment. Defendant contends it discharged Plaintiff because of Patient A's complaint, the June 16, 2015 complaint from the female patient, and Plaintiff's use of a cell phone on the treatment floor.

Plaintiff initiated the instant proceeding on September 15, 2016, alleging that Defendant violated Title VII and state law by subjecting her to a hostile work environment and by suspending and discharging her in retaliation for reporting Patient A's sexual harassment. [Doc. No. 1].

Defendant moved for summary judgment on September 14, 2017, seeking dismissal of all Plaintiff's claims. [Doc. No. 20]. Plaintiff responded to Defendant's motion on October 5, 2017 [Doc. No. 28], and Defendant replied on October 19, 2017 [Doc. No. 30].

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

5

which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. <u>Hostile Work Environment Under Title VII</u>

Title VII forbids employers to take actions on the basis of sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). "The Supreme Court has held that Title VII proscribes the creation of 'a discriminatorily hostile or abusive environment.'" *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 839 (5th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).

To prevail on a sexual-harassment-based hostile work environment claim, a plaintiff must prove that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was so severe or pervasive that it affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Woods v. Delta Beverage Grp., Inc*., 274 F.3d 295, 298 (5th Cir. 2001); *Wiggins v. St. Luke's Episcopal Health Sys*., 517 F. App'x 249, 251 (5th Cir. 2013). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Wiggins*, 517 F. App'x at 251.

Here, Defendant grounds its motion primarily on the fourth factor, arguing that the alleged harassment did not affect a term, condition, or privilege of Plaintiff's employment. Courts examining this factor look at all the circumstances, including the frequency of the discriminatory

conduct, the severity of the conduct, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Id.* Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998).

A recurring point in the Supreme Court's hostile environment cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The standards set forth by the Supreme Court seek to ensure that Title VII does not become a "general civility code." *Oncale*, 523 U.S. at 80. Properly applied, the standards will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788. The conduct, in the end analysis, must be "extreme." *Id.* at 788.

Here, Plaintiff alleges the following acts of harassment: (1) sometime in 2014, Patient B told her he wanted her to "get naked and take care of [him]"; (2) on an undisclosed date, Patient C asked to "touch [her] bottom" and claimed that he "would have had [her] sprung, back in [his] young days[]"; (3) In March of 2015, Patient A attempted to grab her breast and forced her to evade his grasp; and (4) Patient A wagged his tongue, licked his lips in a "sexually overt manner[,]" spoke to her using profane language, and threatened to "have her job."[4]

---

[4] All of the alleged harassment originated from patients rather than coworkers. In that regard, "[a]n employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e).

Comparing these instances of harassment to instances set forth in cases decided by courts in the Fifth Circuit, and considering all the circumstances, the harassment Plaintiff suffered, even if proved, is not so severe or pervasive that it affected a term, condition, or privilege of Plaintiff's employment.[5] While the patients' conduct towards Plaintiff may have been subjectively offensive, it was not objectively offensive enough to amount to a change in the terms or conditions of her employment.[6] As the conduct Plaintiff experienced[7] was not sufficiently extreme, Defendant is

---

[5] *See, e.g., Derouen v. Carquest Auto Parts, Inc.,* 2001 WL 1223628, at *1 (5th Cir. Sept. 24, 2001) (holding that plaintiff's allegations that a co-worker attempted to grab her breast and later touched and rubbed her thigh, that customers made sexually threatening remarks, and that supervisors did not respond to her complaints about these incidents, did not support a hostile work environment claim); *Shepherd v. Comptroller of Pub. Accounts of State of Tex.,* 168 F.3d 871, 874 (5th Cir. 1999) (several instances of unwanted touching, attempting to look down employee's clothing, and making offensive remarks did not render work environment objectively hostile); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 321-22, 326 (5th Cir. 2004) (finding the following insufficiently severe or pervasive: coworker made remark to plaintiff about another female employee's body, asked plaintiff to come into work early so that they could be alone, slapped her "behind," attempted to kiss her, spoke to her while she was in the restroom, and brushed against her breasts and backside on multiple occasions); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825 (5th Cir. 2009) (single incident in which coworker "chested up" to female employee's breasts in 30-second confrontation, then followed employee as she tried to separate herself and placed his arm around her waist then rubbed his pelvic region across her hips and buttocks, was not so severe or pervasive); *Wiggins*, 517 F. App'x at 251 (affirming summary judgment where the plaintiff was subjected to sexual comments that his female coworkers allegedly made and brief moments of physical contact with his female supervisor); *Gibson v. Potter*, 264 F. App'x 397, 398 (5th Cir. 2008) (no hostile work environment where the plaintiff's supervisor "grabbed her on the buttocks and made suggestive comments" to her); *Barnett v. Boeing Co.*, 306 F. App'x 875 (5th Cir. 2009) (holding that the following was not sufficiently severe or pervasive: coworker leered at the employee, touched her in sexually inappropriate and unwelcome ways, and actively intimidated her after she complained of his action); *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195 (5th Cir. 2007).

[6] *See Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (holding that conduct that "sporadically wounds or offends but does not hinder [an] employee's performance" is not actionable); *see also Trahan v. LaSalle Hosp. Serv. Dist. No. 1*, 2014 WL 1217850, at *7 (W.D. La. Mar. 24, 2014) (finding that hugging the plaintiff, kissing her, tickling her, and touching her breast on one day, and glaring, intimidating, and eavesdropping another day was not sufficiently severe and was more isolated and discrete than pervasive); *St. Clair-Sears v. Lifechek*

8

entitled to judgment as a matter of law, and Plaintiff's hostile work environment claim is DISMISSED WITH PREJUDICE.

### C. Retaliation Under Title VII

Plaintiff alleges that Defendant suspended and discharged her because she reported Patient A's sexual harassment. [Doc. No. 1, p. 2]. Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). To prove retaliation, a Plaintiff must: "set out a prima facie case of retaliation; if the plaintiff sets out a prima facie case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its action; if the defendant provides such a reason, the plaintiff must prove that it is pretextual." *Wiggins*, 517 F. App'x at 251-

---

*Staff Servs., Inc.*, 2013 WL 4487531, at *5 (S.D. Tex. May 30, 2013) (finding insufficient: (1) a coworker sat on top of the plaintiff, rubbed her back, and asked her out on a date; (2) coworker rubbed against her and placed his hand on her "butt"; (3) coworker stood so close that the plaintiff felt his erection; and (4) coworker asked her out on dates to various establishments); *Pfullman v. Texas Dep't of Transp.*, 24 F. Supp. 2d 707 (W.D. Tex. 1998); *Chelette v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 2513918, at *1 (W.D. La. Aug. 29, 2006); *Combs v. Exxon Mobile Corp.*, 2007 WL 3353504, at *1 (M.D. La. Nov. 7, 2007); *Jones v. Seago Manor Nursing Home*, 2002 WL 31051027, at *1, 4 (N.D. Tex. Sept.11, 2002).

[7] Plaintiff also presents evidence that Patient A harassed her coworkers. [Doc. No. 28, pp. 7-8]. This evidence is only relevant if it affected a term, condition, or privilege of *Plaintiff's* employment. *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2009) (stating that evidence pertaining to harassment of those other than the plaintiff was not relevant); *Jones v. Flagship Int'l*, 793 F.2d 714, 721 (5th Cir. 1986) (evidence of harassment of coworkers "does not bear on [a plaintiff's] individual claim of sexual harassment in the absence of evidence that such incidents affected [the plaintiff's] psychological well-being."). As Plaintiff does not explain how the harassment of others affected either her psychological well-being or a term, condition, or privilege of her employment, the evidence is irrelevant.

9

52.

Here, even assuming, without deciding, that Plaintiff establishes a prima facie case of retaliation,[8] there is no genuine dispute that Defendant has produced legitimate, non-discriminatory reasons[9] for discharging Plaintiff and that those reasons were not pretextual. [Doc. No. 20-1, pp. 13-16].

Defendant's first legitimate, non-discriminatory reason for discharging Plaintiff is that, on June 4, 2015, Plaintiff used her cell phone on the treatment floor. [Doc. Nos. 20-4, p. 20; 20-3, p. 28]. Defendant prohibits employees from using cell phones on the treatment floor because it presents a safety risk. [Doc. Nos. 20-3, p. 32; 20-4, p. 21]. Scalia instructed Plaintiff to store her phone in her locker and, in response, Plaintiff slammed her locker shut, prompting Scalia to call Plaintiff into her office. [Doc. No. 20-4, p. 20].

Second, on June 16, 2015, Scalia received a complaint from a female patient that Plaintiff did not reset the patient's dialysis machine when necessary, had a hateful attitude when asked for assistance, and failed to assist another patient who needed help. [Doc. Nos. 20-8, pp. 1, 3; 20-4, pp. 9-11].

Third, on June 23, 2015, Scalia received a complaint from Patient A concerning Plaintiff.

---

[8] To establish a prima facie case, "the plaintiff must show that (1) she participated in an activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action." *Moffett v. Miss. Dep't of Mental Health*, 507 F. App'x 427, 431 (5th Cir. 2013).

[9] "The employer's burden is simply a burden of production, and it does not involve a credibility assessment." *Moffett*, 507 F. App'x at 431; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) ("[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.").

Patient A stated that he had a cramp in his leg, stood up to alleviate the cramp, and asked Plaintiff to take him off the machine. [Doc. Nos. 20-4, pp. 12-13; 20-8, pp. 1, 4]. He complained that Plaintiff had a "snappy attitude," refused to take him off the machine, and told him to get out of her face and sit down. [Doc. Nos. 20-8, 20-9]. Chelsea Talley, another PCT, witnessed the incident and confirmed Plaintiff A's complaints. [Doc. No. 20-8, p. 5-6]. According to Temple, refusing to remove a patient from the dialysis machine is tantamount to holding a patient against his will. [Doc. No. 20-6, p. 9].

Plaintiff, however, maintains that Defendant's stated reasons for termination are pretextual. [Doc. No. 28, p. 18]. "To demonstrate pretext and avoid summary judgment, [a plaintiff] must show a conflict in *substantial evidence* on the question of whether the employer would not have taken the action *but for* the protected activity." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (internal quotations marks and quoted source omitted) (emphasis added).

Plaintiff does not address the first of Defendant's proffered reasons for termination. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("The plaintiff must rebut *each* nondiscriminatory reason articulated by the employer.") (emphasis added). As to the second reason—the complaint from the female patient—Plaintiff argues that Defendant never informed her that there was a complaint, who the complaining female patient was, or what the patient complained of. That Plaintiff was unaware of the patient's complaint, however, does not necessarily indicate that Defendant did not rely on the complaint as one reason for discharge. Even drawing all inferences in Plaintiff's favor, her ignorance of the complaint is far from substantial evidence of pretext. Moreover, Defendant presents evidence that it did not have an opportunity to advise Plaintiff of the

complaint because Plaintiff was not at work for "several days" after the patient lodged the complaint. [Doc. No. 20-4, p. 12].

Next, Plaintiff claims that Defendant's third proffered reason—the encounter with Patient A—is pretextual because Defendant did not properly investigate and confirm Patient A's complaint before terminating Plaintiff. [Doc. No. 28, p. 20]. Specifically, Plaintiff argues that Defendant discharged her without first interviewing a nurse, Kala Parks ("Parks"), who witnessed the incident. *Id.*

Defendant, however, provides evidence that Scalia did investigate the incident before terminating Plaintiff. Scalia testified that she spoke with Chelsea Talley who, as mentioned, confirmed Patient A's version of events. [Doc. No. 20-4, p. 17]. Temple also testified that Defendant's human resources department investigated the incident. [Doc. No. 30-2, p. 2]. The human resources department spoke with Plaintiff and documented her allegations. [Doc. No. 20-3, p. 90]. All of this suggests that Defendant performed at least a good faith investigation.[10]

Even if Defendant did not interview Parks, the adequacy of Defendant's investigation into only one of the three reasons Defendant provides for discharging Plaintiff does not establish a genuine dispute surrounding pretext. In *Medlock v. Ace Cash Exp., Inc.*, 589 F. App'x 707, 710 (5th Cir. 2014), the Fifth Circuit explicitly held that "evidence of an improper investigation does not establish a discriminatory motive[,]" and "a deficient investigation does not prove pretext for

---

[10] *See O'Neal v. Cargill, Inc.,* 2017 WL 515084, at *4 (E.D. La. Feb. 8, 2017) ("Employers must make credibility findings in disputed disciplinary situations and may rely on their good faith investigations and reasonable conclusions.").

retaliation."[11] *See Arey v. Watkins*, 385 F. App'x 401, 404 (5th Cir. 2010) (holding that to create a fact issue a plaintiff must do more than show that the employer's investigation was inadequate).

Relatedly, Plaintiff intimates that Defendant's third reason for discharge is pretext because her version of the incident with Patient A is true, and Patient A's version is false. In support, Plaintiff presents Parks' testimony, which tends to corroborate Plaintiff's version of events. [Doc. No. 28-7, p. 3-6]. To recall, though, Chelsea Talley corroborated Patient A's version.

Whether Patient A's complaints concerning Plaintiff are true is, however, irrelevant. *De Anda v. St. Joseph's Hosp.*, 671 F.2d 850, 854, n.6 (5th Cir. 1982) ("Whether [an employer] was wrong in its determination . . . is irrelevant, as long as its belief, though erroneous, was the basis for the termination."). An employer need not be correct in its basis for discharging an employee "to show that its actions were motivated for non-retaliatory reasons." *Jones*, 793 F.2d at 729. "[T]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993).[12] "Simply disputing the underlying facts

---

[11] *See also Gallow v. Autozone, Inc.*, 952 F. Supp. 441, 448 n.6 (S.D. Tex. 1996) (observing that the failure to investigate does not establish pretext); *Bissett v. Beau Rivage Resorts, Inc.*, 2011 WL 915790, at *7 (S.D. Miss. Mar. 16, 2011) (observing, "that the investigation into the employee's conduct was inadequate is insufficient to demonstrate pretext . . . ."); *Sherrod v. AIG Health Mgmt. Servs., Inc.*, 2000 WL 140746, at *7 (N.D. Tex. Feb. 4, 2000) ("Title VII does not guarantee plaintiffs that they may only be terminated after a completely thorough, accurate, and fair investigation into the circumstances around a termination.").

[12] "[A]n employee cannot establish that an employer's reason for termination is pretexual simply by disputing the truth of the underlying facts for that reason. . . . Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, an employee must submit evidence to support an inference that the employer had a retaliatory [or discriminatory] motive, not just an incorrect belief." *Coleman v. Jason Pharm.*, 540 Fed. App'x. 302, 305 (5th Cir. 2013); *see Little v. Republic Ref. Co.,* 924

of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Rather, "The issue is whether [a defendant's] *perception* of [an employee's] performance, accurate or not, was the real reason for her termination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). "[T]he inquiry is limited to whether the employer believed [the allegations against the employee] in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner*, 987 F.2d at 1165.[13]

Here, even assuming Defendant mistakenly believed the version of the incident given by Patient A and Chelsea Talley,[14] Plaintiff has failed to submit any evidence—much less substantial evidence—that Defendant unreasonably relied on their accounts, that Defendant did not, in good faith, perceive their versions as true, or that Defendant's perception of Plaintiff's actions was not the real reason for discharging Plaintiff.[15] Instead, the evidence reveals that Defendant investigated

---

F.2d 93, 97 (5th Cir. 1991) (holding that "a dispute in the evidence concerning [an employee's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [an employer's] proffered justification is unworthy of credence."); *see also Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 372 (5th Cir. 2016).

[13] *See Cervantez v. KMGP Servs. Co. Inc.,* 349 F. App'x 4, 10 (5th Cir. 2009) (emphasizing "that a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."); *Jones*, 793 F.2d at 729 (holding that it is sufficient that the employer had reasonable grounds, or in good faith thought it had reasonable grounds for suspending and discharging the employee); *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir.1996) (noting that an employer's employment decision is protected from Title VII liability if it is made with reasonable belief and in good faith).

[14] *See Devere v. Forfeiture Support Assocs., L.L.C.*, 613 F. App'x 297, 301 (5th Cir. 2015) (reasoning that an employer may properly rely on the reports of one witness "even if those reports are incorrect.").

[15] *See Bugos v. Ricoh Corp.*, 2008 WL 3876548, at *4 (5th Cir. Aug. 21, 2008) (affirming the district court's decision that the plaintiff failed to present a genuine dispute as to pretext,

Patient A's complaint and concluded that Patient A and Talley were more credible than Plaintiff.[16]
Defendant's decision to rely on their accounts of the incident does not show that Defendant harbored a retaliatory motive.[17]

Plaintiff has failed to demonstrate a conflict in substantial evidence on the question of whether Defendant would not have suspended or discharged her *but for* her reports of harassment. Otherwise stated, there is no genuine dispute that Defendant's reasons for termination were pretextual. As demonstrating prextext is an essential element of Plaintiff's claim, Defendant is entitled to judgment as a matter of law, and Plaintiff's retaliation claim is DISMISSED WITH PREJUDICE.

### D. Plaintiff's Claims Under Louisiana Law

---

because the employee did not show that the employer "did not in good faith believe these reasons given for [the employee's] termination or, accordingly, that [the] reasons were not the real reason for his termination.").

[16] Plaintiff argues that, on March 17, 2015, Norwood found Plaintiff "to be a commendable employee whose performance had improved over the last year[,]" and that Norwood "noted that she would like to see [Plaintiff] mentor new hires." [Doc. No. 28, p. 21]. This, however, is not substantial evidence of retaliation because Norwood's reviews occurred prior to the three incidents Defendant cites as its reasons for discharge. Moreover, to the extent Plaintiff argues that her positive performance reviews show that she did not possess the propensity for aggressive behavior towards patients, the argument is without merit. Again, whether Plaintiff actually engaged in aggressive behavior towards patients—i.e. whether Plaintiff is innocent of the proffered accusations—is irrelevant as long as Defendant reasonably believed the accusations and grounded its decision to suspend and discharge Plaintiff on the accusations. *See Arey*, 385 F. App'x at 404 (holding that evidence of positive performance reviews created "only a dispute as to the correctness of [the employer's] beliefs[,]" which is "not sufficient to create a jury question . . . .").

[17] *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("While the prudent action may have been to discuss the event with [plaintiff] and obtain his side of the story before terminating him, evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision.").

Plaintiff, as mentioned, alleges a hostile work environment claim and a retaliation claim under state law.[18] [Doc. No. 1, p. 4]. As to Plaintiff's hostile work environment claim, the Fifth Circuit emphasized:

> Louisiana's anti-discrimination statute, La.Rev.Stat. Ann. § 23:301 et seq., is "substantively similar" to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance. *Trahan v. Rally's Hamburgers, Inc.*, 696 So.2d 637, 641 (La.App.1st Cir.1997). Consequently, the outcome of [the plaintiff's] statutory discrimination and retaliation claims will be the same under the federal and state statutes.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Here, because Defendant is entitled to judgment as a matter of law on Plaintiff's hostile work environment and retaliation claims under Title VII, Defendant is also entitled to judgment as a matter of law under state law.[19] Both of Plaintiff's state law claims are DISMISSED WITH PREJUDICE.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 31st day of October, 2017.

*/s/ Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[18] The parties only cite federal law in the instant motion, response, and reply.

[19] As to Plaintiff's retaliation claim, the Louisiana Employment Discrimination Law does not recognize a claim for retaliation. *Glover v. Smith*, 478 F. App'x 236, 244 (5th Cir. 2012); *Lowry v. Dresser, Inc.*, 893 So. 2d 966, 967 (La. Ct. App. 2005). Rather, under LA. REV. STAT. § 51:2256, an employer is prohibited from *conspiring* to retaliate. Plaintiff does not allege a conspiracy or present any evidence of a conspiracy.